UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | No. 1:22-CR-00034-MSM-PAS |
| MIGUEL E. PAVAO, | ) ) ) ) | |

MEMORANDUM & ORDER

Mary S. McElroy, United States District Judge.

   Miguel E. Pavao was indicted on March 16, 2022, for possession of a firearm after a previous felony conviction. The firearm was seized during a search of his vehicle undertaken after a traffic stop for swerving between lanes. Mr. Pavao moved to suppress the firearm as the product of an unlawful frisk of his person during an unlawfully prolonged detention on the highway. The Court held an evidentiary hearing on May 15, 2023, at which Warwick Police Officer Connor R. Bemis, the officer responsible for the stop and frisk, testified. Based on Officer Bemis' testimony, after hearing the arguments of counsel, and reaching conclusions on the mixed questions of law and fact presented, the Court GRANTS Mr. Pavao's Motion to Suppress the firearm (ECF No. 18), all testimony about the firearm, the marijuana found by the police after a call for backup was made and any statements made by Mr. Pavao after that call.

1

I.     FACTS

The Court finds the testimony of Officer Bemis both straightforward and truthful and the facts found are based on his testimony. At 7:53 p.m. on February 6, 2022, Officer Bemis stopped the car Mr. Pavao was driving because it was swerving. The vehicle stopped promptly when the cruiser's lights were activated. A license plate check conducted as the officer pulled over came back negative for stolen vehicle. The officer then approached the passenger side of the car. Mr. Pavao was alone in the vehicle. Mr. Pavao, compliant and cooperative throughout the incident, produced a license and registration.[1] Almost immediately, the officer noticed the odor of marijuana. Mr. Pavao's hand was shaking, and he was chain-smoking cigarettes. Officer Bemis described the ensuing conversation this way: "I had asked him why he was swerving originally, and he said he had been reaching around or messing around with stuff inside the vehicle. He also informed me he had smoked a marijuana joint earlier in the day and was tired." (Tr. at 11.)[2] The officer noticed residue on the floorboard, which Mr. Pavao identified as "marijuana crumbs." (Tr. at 43.)

At 7:55 p.m. – just two minutes after pulling the Pavao car over — Officer Bemis called for backup because he had decided to search the vehicle for additional contraband, and it was Warwick's practice not to permit searches by officers who were alone. He testified that he "radioed for back up within a minute or two of [arriving

---

[1] The officer testified he did not want to leave Mr. Pavao in order to go back to the cruiser to verify the license and registration. He acknowledged he had the ability to make those checks from his portable radio, but he chose not to do so.

[2] The transcript has been filed with the Court.

at the passenger window]," Tr. at 11, which is consistent with the call for backup coming just two minutes after he radioed dispatch that he was stopping a vehicle. At about the same time, he testified, he saw Mr. Pavao reach down to the waistband of his pants as if to adjust his pants, "fidgeting with the waistline." (Tr. at 15.) This was a gesture that Mr. Pavao repeated over the course of the seven or so minutes until another officer responded and Mr. Pavao was taken out of his vehicle. During that interval, while waiting for backup, Mr. Pavao pulled a baggie that appeared to contain marijuana out of his jacket, declaring something to the effect of "now you don't need to search my car, here you go, something along those lines."[3] (Tr. at 16.) As soon as Mr. Pavao was out of the vehicle, he was patted down, revealing a .40 caliber semi-automatic pistol. The gun was seized, and he was arrested for possession of the weapon.

Officer Bemis made it evident several times in his testimony that he could not recall when he saw Mr. Pavao fumble with his waistband in relation to the time he radioed for backup. Both events are important. It is the call for backup that indicates beyond doubt that the stop was extended for the purpose of searching the vehicle for contraband. The officer testified to that, and it is consistent with what he said was Warwick's practice not to allow solo officers to conduct searches of vehicles. Second, it is the fumbling with the waistband that the government rests on to establish an objective fear for officer safety such that the frisk would be lawful under *Terry v.*

---

[3] A second similar baggie of marijuana was discovered hidden in the vehicle during a subsequent full search of the car. The two baggies together weighed 1.1 oz.

3

*Ohio,* 392 U.S. 1, 21 (1968), and might serve as a basis for prolonging the stop. Officer Bemis testified several times about the timing, consistently choosing the words, "[at about] the same time." (Tr. at 59.) But in response to the Court's questioning, he acknowledged that it was the odor of marijuana and the crumbs that caused him to detain the car for a further search.[4]

## II.     ANALYSIS

Mr. Pavao puts forth two reasons why the seizure of the gun was unconstitutional. First, he maintains that instead of simply giving him a citation for erratic driving and permitting him to leave, the officer deliberately prolonged the stop in order to conduct a search of the vehicle unrelated to the mission of the stop. This would violate the proscriptions of *Rodriguez v. United States,* 575 U.S. 348, 350, 352 (2015), which mandates that "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures," unless the additional time is supported by "reasonable suspicion" of another crime. Second, even if the stop were not unlawfully prolonged, Mr. Pavao contends that the pat-down of his person violated *Terry* because it was not

---

[4]  THE COURT: So the waistband touching wasn't part of you asking for backup to search the car. Your probable cause was the odor of marijuana and the crumbs on the floor?

  THE WITNESS: Originally, yes, and then it developed further.

  THE COURT: Okay. But originally.

  THE WITNESS: Originally, yes, your Honor.

(Tr. at 59.)

4

supported by an objectively reasonable fear for the officer's safety. *United States v. Harrington*, 56 F.4th 195, 203-04 (1st Cir. 2022) (fear for safety is objective, not subjective).

The burden here is on the government to justify, by a preponderance of the evidence,[5] both the detention and the frisk. Whenever a search or seizure is performed without a warrant and on less than probable cause, "the government bears the burden of proving that the seizure was sufficiently limited in its nature and duration to satisfy the conditions of a *Terry*-type investigative stop." *United States v. Acosta-Colon,* 157 F.3d 9, 14 (1st Cir. 1998).

A. <u>Prolonged Stop</u>

Officer Bemis' testimony left no doubt that as soon as he saw Mr. Pavao's hands shaking, smelled marijuana and saw crumbs on the floor, he made up his mind to search the vehicle: he called for backup and everything that happened next occurred only because he was waiting for backup to conduct the search. Because he had by that time completed the mission of the stop – which was for the driving infraction of swerving – the wait can be justified only by a reasonable suspicion that there was additional marijuana in the car which exceeded the 1 oz. demarcation between a civil and criminal violation.[6]

---

[5] *United States v. Matlock,* 415 U.S. 164, 177 n.14 (1974).

[6] Rhode Island decriminalized marijuana in 2013. Ch. 12-221, amending R.I.G.L. § 21-28-4.1(c)(2)(iii). While it remained against the law, the simple possession of less than 1 oz. became a civil infraction. *Id.* A lawful stop rests upon a reasonable suspicion "that the person apprehended is committing or has committed a *criminal offense.*" *Arizona v. Johnson,* 555 U.S. 323, 326 (2009) (emphasis supplied). Thus,

5

A seizure justified by the interest in issuing a ticket reaches the "unreasonable" point "if it is prolonged beyond the time reasonably required to complete that mission." *Illinois v. Caballes,* 543 U.S. 405, 407 (2005).  The brief questioning of Mr. Pavao by Officer Bemis after he first approached the passenger window was consistent with the stop for a traffic infraction.  But nothing in those two minutes gave reason to believe Mr. Pavao was committing another crime.  *Compare United States v. Clark,* 879 F.3d 1, 5 (1st Cir. 2018) (the three differing dates of birth given by the driver led to outstanding warrants); *United States v. Dunbar,* 553 F.3d 48, 56 (1st Cir. 2009) (inconsistent answers given by driver while officers were writing out the ticket revealed an expired license).  Here, everything the officer learned in the two minutes before he decided to hold the vehicle for a full search was consistent with Mr. Pavao's declaration that he had smoked a joint earlier in the day.  That explained the odor of marijuana and the crumbs on the floor.  Officer Bemis testified directly that he never put Mr. Pavao through a field sobriety test because he did not think he was operating under the influence.  Clearly the Officer accepted that the odor was not connected to then-occurring use of marijuana, but to the past use that Mr. Pavao

---

cause to suspect a civil infraction may not support a constitutional stop.  The government defends the stop by pointing to the fact that possession of even residue remained a federal offense.  But Officer Bevis made it clear that he was considering only a violation of state law; he testified that had Mr. Pavao had a medical marijuana card pursuant to R.I.G.L. § 21-28.6-4, he would have let him go without conducting a further search.  Moreover, for every year since FY 2015, an appropriations rider has prohibited the Department of Justice from using taxpayer funds to enforce federal laws that conflict with state laws decriminalizing or legalizing marijuana, at least for medical purposes.  *See e.g.,* Consolidated Appropriation Act, 2023, H.R. 2617 (117th Congress).

acknowledged. There was nothing at the time of the 7:55 p.m. call for backup to indicate that Mr. Pavao possessed any additional marijuana or that, if he did, the amount would exceed the 1 oz. that escalated a civil violation to a criminal offense.

Contrary to the government's assertion, this case is unlike *United States v. Sanders,* 248 F. Supp. 3d 339 (D.R.I. 2017), where another judge of this District upheld a continued detention in order to search a vehicle for contraband. There, the "totality of the circumstances" was fed by many factors not present here: in addition to the odor of marijuana and admission of smoking earlier in the evening, the defendant exhibited "furtive behavior when he moved from one seat to another while the car was still in motion," the driver was "firmly clenching the steering wheel," he was not simply nervous but "overly nervous," there was an entire marijuana cigarette in the ashtray, the defendant kept fiddling with a GPS application on his cellphone, he "feign[ed] disinterest" in the interaction with the officer, and he was not wearing a jacket on a cool night. *Id.* at 347. Even these observations alone did not necessarily warrant prolonged detention: they justified the decision to "take a few minutes to run the BCI/III checks," and it was "the extensive histories of each of the vehicle's occupants" that provided enough support to hold the car in order to search it. *Id.* at 347-48.

The Court does not disagree with the *Sanders* court that the odor of marijuana is a relevant circumstance to be considered, along with others, in the determination of whether in the "totality of circumstances" there is reasonable suspicion to believe a crime is being committed. In *Sanders* there were numerous other factors; in this

case, there are none but the crumbs on the floor which are also consistent with smoking a joint earlier.[7]   The government relies on *United States v. Staula,* 80 F.3d 596, 602-03 (1st Cir. 1996). *Staula* indeed held that the mere odor of burnt marijuana justifies a full search of a vehicle, pursuant to which the car can presumably be detained. *Staula* was a 1996 case, nearly two decades before possession of small amounts of marijuana became decriminalized.  While this Court would not lightly chart a course deviant from a First Circuit case, decriminalization puts the whole "odor of marijuana" in a different light.  A search of a vehicle requires probable cause to believe *criminal* activity is "afoot."  The smell of burnt marijuana no more indicates that an unlawful amount of marijuana is possessed than it does that only one joint is in the car – or, more accurately, *was* in the car at the time it was smoked.  Yet if there is not reasonable suspicion of more than 1 oz. in the car at the time of this stop, there was no *criminal* activity afoot at all.

---

[7] The Court finds *United States v. Thompson,* No. 12-10365, 2014 WL 108312 (D. Mass. 2014), cited by the government, unpersuasive.  That Court held that the odor of marijuana justified a prolonged detention at a time when, according to the government, small amounts of marijuana had been decriminalized.  The Court is not inclined to agree with *Thompson* for several reasons.  First, for support, it cited *Flowers v. Fiore,* 359 F.3d 24, 30-31 (1st Cir. 2004), but there was no marijuana, or odor of marijuana, in the *Flowers* case.  *Flowers* involved the constitutionality of a stop, frisk and brief detention in a situation in which police received a report of a threat to send two African-American men with guns to someone's house, an observation of two African-American men driving past the house in a small gray or black vehicle, the stop of two men matching the description in a small gray vehicle within a few minutes after the report, about a half mile away from the residence. Second, the decision in *Thompson* to prolong the stop was made not on the odor of marijuana alone, but "also when coupled with information about the [significant] criminal histories of [the two occupants], …" which included "gangs and guns" for one of them.  Third, the *Thompson* opinion does not address, or even note, the impact of decriminalization.

Officer Bemis testified that it was his practice to search for additional marijuana *every time* he found any marijuana at all, if the subject lacked a medical marijuana card.[8] (Tr. at 62.) He justified it by saying he couldn't know without searching whether the suspect possessed an unlawful amount. *Id.* The law, however, does not authorize a search because the officer "doesn't know" whether a person possesses contraband. That rationale, if allowed, would support a search of the person, or the vehicle, of everyone who possessed the permitted and thoroughly noncriminal amount of less than 1 oz. of marijuana.[9] "Reasonable suspicion" by its very terms required Officer Bemis to have at minimum a *suspicion* of criminal possession of marijuana, not simply a failure to have any idea whether Mr. Pavao possessed a criminal quantity or not. Continued detention must be "independently supported by individualized suspicion" of criminal activity. *Rodriguez,* 575 U.S. at 357. The fact that Mr. Pavao's hands were shaking, or that he appeared nervous, adds nothing to the reasonable suspicion equation. It is not uncommon for those stopped by police to exhibit nervousness. *See United States v. Garcia,* 53 F. Supp. 502, 511 (D.N.H. 2014) (unlawful prolonging of stop based on defendant's nervousness and officer's skepticism of his story that he and the passenger were on a "test drive" to check out a car repair). "Nervousness is a common and entirely natural

---

[8] The officer in his testimony seemed to recognize the inconsistency between assuming a possessor of marijuana who lacked a card might be carrying more than the 1 oz. permitted, but not assuming a possessor of a card might be carrying more than the quantity authorized by the card. (Tr. at 62-63.)

[9] Rhode Island has now gone further and legalized recreational marijuana. R.I.G.L. § 21-28-4.01(c)(2)(iv), (v).

reaction to police presence, …" *United States v. McKoy,* 428 F.3d 38, 40 (1st Cir. 2005). "A person stopped by the police is entitled to be nervous without thereby suggesting he is armed and dangerous or, indeed, has anything to hide." *United States v. Spinner,* 475 F.3d 356, 360 (D.C. Cir. 2007). Mr. Pavao's nervousness was not accompanied by aggression or suspicious movements. *See United States v. Orth,* 873 F.3d 349, 352 (1st Cir. 2017) (prolonging detention was reasonable where occupants exhibited abnormal nervousness, like "deer-in-the-headlights," and the driver would not open glove compartment or produce registration, would not identify a "large black" object between his leg and the console, and became verbally aggressive). Nor was it accompanied by an unwillingness to provide identification. *See United States v. Chaney,* 584 F.3d 20, 26 (1st Cir. 2009) (reasonable suspicion to prolong stop where, in addition to nervousness, the defendant gave implausible answers raising a suspicion of having given a false name). Nor did Mr. Pavao "adjusting" his waistband add anything. At that point, he had touched his waistband only once and, indeed, Officer Bemis was already on his radio calling for backup, having made the decision to hold the vehicle to search it.

Officer Bemis had no lawful basis to prolong the stop.[10] Mr. Pavao's response to the prolonged detention, of throwing out a baggie of marijuana, cannot therefore be the basis of cause to continue to hold the vehicle for a further search.

---

[10] The parties have brought to the Court's attention *State v. Junjie Li,* R.I. Super., K2-2019-1532A (ECF No. 18-2), currently pending on appeal in the Rhode Island Supreme Court. In *Junjie,* a Rhode Island Superior Court justice, acknowledging the national sea change of decriminalization and legalization of recreational marijuana, and analyzing the effect of that transformation of the contraband landscape upon the

B. <u>The Frisk (pat-down)</u>

Even if the prolonged detention were lawful, that is insufficient to justify the frisk. *United States v. Wetmore,* 560 F. Supp. 3d 591, 601-02 (D.N.H. 2021), *app. vol. dism.,* No. 21-1449, 2021 WL 6101509 (1st Cir. Aug. 25, 2021) ("[T]here must be a separate analysis of whether the standard for pat-frisks has been met."). The issue here is whether the totality of circumstances would have caused a reasonable police officer to fear for his safety, the standard for justifying a pat-down. *United States v. Sanchez,* 817 F.3d 38, 42 (1st Cir. 2016) ("totality of circumstances."); *United States v. Cardona-Vincente,* 817 F.3d 823, 827 (1st Cir. 2016) (same). Officer Bemis never articulated a belief that his safety was in jeopardy; he simply reported that he was unsure what Mr. Pavao's frequent touching of his waistband meant. But the standard is not what the arresting officer subjectively believes; it is the objective question of what a reasonable officer would believe. *United States v. Guerrero,* 19 F.4th 547, 557 (1st Cir. 2021). The Court finds there were no circumstances here prior to the frisk being carried out that would raise any suspicion that Mr. Pavao was armed.

There was nothing in his speech or behavior that was aggressive or threatening, from which one might infer he could be violent. On the contrary, he was

---

requirements of the Fourth Amendment, held that the odor of marijuana plus nervousness does not provide a basis to prolong a traffic stop in order to conduct a further search. *Id.* at 19. *Junjie* shares a factual similarity with this case: there, the officer called for a drug-sniffing canine to respond to the scene, signaling the conversion of the stop from a traffic violation to an investigation for something else. Similarly, the call by Officer Bemis for backup had the same legal meaning.

11

compliant, cooperative and, while nervous, not agitated. Officer Bemis testified "he was very polite, no aggressive actions or anything." He was not suspected of committing a violent crime, which itself would be reason to think he might be armed. *See United States v. Belin,* 868 F.3d 43, 49 (1st Cir. 2017) (quoting *United States v. Scott,* 270 F.3d 30, 41 (1st Cir. 2001)) ("[w]hen the officer suspects a crime of violence, the same information that will support an investigatory stop will without more support a frisk."). There was nothing about the location in which he was stopped that might indicate gang or other criminal activity. *Compare United States v. Am,* 564 F.3d 25, 30-31 (1st Cir. 2009) (officers also knew of defendant's gang activity and uncharacteristic behavior in location of known gang activity). Police had received no information about him indicating he might be armed, as in *United States v. Brake,* 666 F.3d 800, 805 (1st Cir. 2011), where, in addition to suspicious conduct reaching into or retrieving something from their van, the two men had been reported to be engaging in menacing behavior with a gun by a resident in the house they were apparently leaving. Mr. Pavao touching his waistband even several times was not a threatening gesture, nor one indicative of a person with a weapon, although Officer Bemis was concerned enough to tell Mr. Pavao to stop. The officer testified that a suspect's "rapidly staring, you know, at a particular target area multiple times" (Tr. at 17) can be a sign of a weapon, but he testified that Mr. Pavao "target glanced his waistband" only "at one point." *Id.* He unhesitatingly put his hands on his head when requested to do so. Officer Bemis testified that the "repeated motions for the waistband" made him concerned, Tr. at 19, but that concern must be supported by

12

specific behavior that would cause a reasonable officer to believe Mr. Pavao was armed.

The Court recognizes the line of cases that rely on a presumption that those who engage in drugs can be presumed to be armed. *United States v. McCoy,* 773 Fed. Appx. 164, 165 (4th Cir. 2019) (per curiam). The Court finds that presumption inappropriate here for several reasons. First, in many cases there are other indicia of dangerousness. In *McCoy* itself, the officer knew the defendant had been twice convicted previously of armed robbery. *United States v. McCoy,* No. 3:17-cr-00240-MOC-DSC, 2018 WL 1144591, *1 (W.D.N.C. Mar. 2, 2018). Second, the First Circuit has not relied on such a presumption. Very recently, in *United States v. Harrington,* 56 F.4th 195 (1st Cir. 2022), notwithstanding that the defendant appeared under the influence of opioids and admitted he had drugs on his person, the Court examined whether there were objective and particularized facts to support a reasonable suspicion that Harrington was armed and dangerous. While the Court noted a common association between drug transactions and weapons, it relied on Harrington's noncompliance with an order to place his hands on top of his head, his motions instead toward his pocket, and his reaching back into the car for something near the center console after he was removed from the vehicle.[11] Those specific and articulable facts "would reasonably warrant the pat-frisk given fear for officer safety."

---

[11] According to the district court, Harrington was also trying to reach for something on the floor area. *United States v. Harrington,* 557 F. Supp. 3d 323, 335 (D.N.H. 2021).

13

*Id.* at 204. In contrast here, even though by the time of the frisk Mr. Pavao had touched his waistband several times, he *complied* with an order to place his hands on his head, and he neither reached for any object nor even put his hand *inside* his waistband as if to retrieve an object.

Third, such a presumption, if reasonable, attaches to "large-scale trafficking in illegal drugs" – crimes that "are 'associated with'" violence. *Belin,* 868 F.3d at 50. It is the *dealing* in drugs that is associated with violence and weapons. *Id.* (noting the connection to "street-dealer-level transactions, at least where the suspect also appeared unusually anxious at the time of the stop.").

Finally, the legitimacy of any presumption that a person who acknowledged smoking a joint of marijuana earlier and who dropped residue on the car's floorboards, is armed and dangerous, must today be in question. In 2013, Rhode Island decriminalized the possession of less than 1 oz. of marijuana, held for personal recreational use. Thus, persons in possession of small amounts of marijuana were not, at the time of this incident, engaging in any criminal behavior at all. And as recreational marijuana dispensaries have been licensed in nearby Massachusetts since 2018, persons smoking a joint could not be presumed to have obtained their marijuana through illicit means. Thus, employing a presumption that Mr. Pavao was armed and dangerous simply from his personal marijuana use has no logic to recommend it.

Accepting the facts testified to by Officer Bemis, the Court finds there were no circumstances justifying the frisk of Mr. Pavao and therefore GRANTS his Motion to Suppress on that basis as well.

The lawful stop conducted by Officer Bemis was unlawfully prolonged from the moment he called for backup and began to detain the vehicle in order to search for marijuana. The frisk was unlawful as it was not based on facts that would cause a reasonably prudent officer to fear for his safety. For both those reasons, or for either independently, Mr. Pavao's Motion to Suppress (ECF No. 18) is GRANTED.

IT IS SO ORDERED:

_____
Mary S. McElroy,
United States District Judge

Date: June 9, 2023